Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PRIME AID PHARMACY CORP.,

    *Plaintiff*,

v.

EXPRESS SCRIPTS, INC.,

    *Defendant*.

Civil Action No. 16-2182

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court by way of the motion filed by Defendant Express Scripts, Inc. ("ESI") to transfer or in the alternative to dismiss the complaint. D.E. 11. Plaintiff Prime Aid Pharmacy Corp. ("Prime Aid") filed a brief in opposition to which Defendant replied. D.E. 15, 16. The parties also submitted supplemental letters after briefing on the motion was complete. D.E. 19, 24, 25. The Court reviewed all submissions made in support of the motion, and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to transfer is **GRANTED** and this case will be transferred to the United States District Court for the Eastern District of Missouri. Because the case will be transferred, the Court will not address Defendant's alternate argument that the complaint should be dismissed.[1]

---

[1] On September 9, 2016, Prime Aid filed a motion seeking leave to file a sur-reply in response to ESI's reply brief. D.E. 20. The Court has discretion to deny requests to file sur-replies when prior submissions are deemed sufficient. *See, e.g., Kearney Partners Fund, LLC v. United States*, No. 11-4075, 2012 WL 8134754, at *1 n.1 (D.N.J. July 13, 2012). Prime Aid fails to demonstrate that

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prime Aid, a specialty pharmacy located in Union, New Jersey, provides over 5,000 New Jersey residents suffering from acute or chronic conditions with medications that are not typically available from retail pharmacies. Compl. ¶¶ 1, 36, D.E. 1. ESI is one of the largest pharmacy benefit managers ("PBMs") in the country, managing prescription drug programs for insurance companies, health plans, or self-insured employers. *Id.* ¶¶ 30, 32. Until 2014, Prime Aid was part of ESI's network of specialty pharmacies. *Id.* ¶ 57. In addition to acting as a PBM, ESI and its affiliates "operate captive specialty pharmacies via mail order." *Id.* ¶ 34.

In mid-2014, ESI terminated Prime Aid from its network due to "numerous breaches" of the Express Scripts, Inc. Pharmacy Provider Agreement (the "Agreement") between Prime Aid and ESI. *Id.* ¶¶ 57, 59, 61-64. In addition to dictating the parties' relationship, the Agreement contained a forum selection clause providing that "[a]ll litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in the U.S. District Court for the Eastern District of Missouri."[2] Declaration of Michael C. Zogby ("Zogby Decl.") Ex. B, § 4, D.E. 11-3. The Agreement also contained a choice of law clause stating that Missouri law shall apply to any disputes. *Id.* Ex. A, § 7.11.

On January 11, 2016, after it was terminated from ESI's network, Prime Aid submitted an application to rejoin ESI's network. Compl. ¶ 52. ESI denied Prime Aid's application on January 22, 2016, "on the alleged basis of a 'Program Integrity Alert.'" *Id.* ¶¶ 53-54. ESI failed to provide

---

a sur-reply is necessary, as the parties' sufficiently addressed the relevant arguments in their prior submissions and ESI's reply brief addresses only arguments that Prime Aid raised in its opposition brief. Consequently, Prime Aid's motion seeking leave to file a sur-reply is denied.

[2] The clause containing the forum selection provision appears in an amendment to the Agreement that became effective on August 20, 2014. Zogby Decl. ¶ 3. The amendment replaced an arbitration provision requiring the parties to submit to binding arbitration in St. Louis County, Missouri. *Id.* Ex. A, §7.15.

2

any further explanation regarding the basis of its denial. *Id.* ¶ 55. ESI later suggested that its refusal to accept Prime Aid's 2016 application was due to numerous breaches of the Agreement in 2014, which had resulted in Prime Aid's termination. *Id.* ¶ 57. Prime Aid contends that ESI's stated reason is a pretext. Prime Aid believes that ESI rejected the application to drive patients to ESI's captive specialty pharmacy instead of Prime Aid. *Id.* ¶¶ 5, 35.

Prime Aid filed suit on April 19, 2016, alleging that ESI's refusal to admit Prime Aid in its network violates New Jersey's Any Willing Provider laws ("AWP")[3] and constitutes anti-competitive behavior in violation of New Jersey and federal antitrust laws. In lieu of an answer, ESI filed this motion seeking to transfer the case, pursuant to 28 U.S.C. § 1404(a), due to the forum selection clause in the Agreement. In the alternate, ESI argues that the Court should dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). D.E. 11. As will be explained below, the Court finds that transfer to the Eastern District of Missouri is appropriate under Section 1404(a). Therefore, it will not address ESI's alternate arguments regarding dismissal.

## II.   MOTION TO TRANSFER STANDARD

When a matter is filed in a proper venue, a federal district court may transfer the case to a different venue pursuant to 28 U.S.C. § 1404(a). *Lasoff v. Amazon.com, Inc.*, 15-2886, 2016 WL 355076, at *2 (D.N.J. Jan. 28, 2016). Section 1404(a) provides that "[f]or the convenience of the

---

[3] The AWP statute states, in relevant part, that

> no pharmacy or pharmacist shall be denied the right to participate as a preferred provider or as a contracting provider, under the same terms and conditions currently applicable to all other preferred or contracting providers, if the contract provides for coverage by contracted or preferred providers for pharmaceutical services, provided the pharmacy or pharmacist is registered pursuant to R.S. 45:14-1 *et seq.*, and accepts the terms and conditions of the contract.

N.J.S.A. 17:48-6j(a)(2).

3

parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

A forum selection clause "may be enforced through a motion to transfer under [Section] 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W.D. Tex.*, 134 S. Ct. 568, 579 (2013). Because a valid forum selection clause "should be given controlling weight in all but the most exceptional cases," the traditional Section 1404(a) analysis is altered if there is an operative forum selection clause.[4] *Id.* at 581-53. First, "the plaintiff's choice of forum merits no weight." *Id.* at 581. Instead, the plaintiff must demonstrate why the court should not transfer the case to the contractually agreed upon forum. *Id.* at 582. Second, the court should not consider the private interest factors, as they "weigh entirely in favor of the preselected forum." *Id.* Finally, "a [Section] 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

### III. ANALYSIS

#### 1. Applicability of the Forum Selection Clause

ESI contends that this matter should be transferred pursuant to Section 1404(a) due to the forum selection clause in the Agreement. Def's Br. at 9-12. Prime Aid counters that the Agreement does not govern this dispute, therefore, the forum selection clause is inapplicable. Plf's Br. at 5-9, D.E. 15.

The parties do not dispute the validity of the Agreement or the forum selection clause itself. Def's Br. at 9; Plf's Br. at 7. There is also no dispute that the Agreement was terminated in 2014

---

[4] For a Section 1404(a) analysis that does not involve a forum selection clause, a court weighs multiple private and public interest factors. *MaxLite, Inc. v. ATG Elecs, Inc.*, 193 F. Supp. 3d 371, 392 (D.N.J. 2016). Moreover, a plaintiff's choice of forum, a private interest factor, "should rarely be disturbed." *Id.* at 393 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

4

and the parties are not currently bound by any other contract. *See* Compl. ¶ 57. Consequently, the only issue before the Court is whether the forum selection clause is applicable to the claims raised by Prime Aid.

"[W]hether or not a forum selection clause applies depends on what the *specific clause at issue* says." *Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir. 1997) (emphasis in original). In other words, courts look to the language of the clause at issue to determine its scope. Language in a forum selection clause such as "related to," "concerning," or "with respect to" is broadly construed to encompass any claim, not just one for breach of the contract in which the clause is contained. *See, e.g., Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 220 (3d Cir. 2015); *Lasoff*, 2016 WL 355076, at *3. For example, in *Wyeth & Brother Ltd.*, a forum selection clause that covered disputes "arising in relation to" applied to any dispute that had "some logical or causal connection to" the agreement at issue. 119 F.3d at 1074; *see also Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (forum selection clause covering suits "arising directly or indirectly" from the agreement was enforceable in antitrust case because "the gist of [plaintiff's] claim is that [defendant] wrongfully terminated the agreement"). Another example is found in *Carlyle*, in which two agreements, each with a separate forum selection clause, were reviewed. The first clause governed claims "with respect to" the agreement. 779 F.3d at 220. The Third Circuit found that the "with respect to" language was interpreted broadly and meant "'connected by reason of an established or discoverable relation.'" *Id.* (citation omitted). The second forum selection clause pertained to any dispute "rising out of relating in any way to" the second agreement. *Id.* at 222. The court in *Carlyle* found this language to be even broader than the "with respect to" requirement. *Id.*

The forum selection clause at issue here reads as follows:

5

> **Dispute Resolution.** Except as provided herein, prior to either party taking any legal action in connection with this Agreement, both parties agree to meet in good faith to resolve any claim or controversy ("Claim"), whether under federal or state statutory or common law, brought by either ESI or [Prime Aid] against the other . . . arising from or relating in any way to the interpretation or performance of this Agreement. . . . ***All litigation*** between the parties ***arising out of or related in any way to the interpretation or performance of the Agreement*** shall be litigated in the U.S. District Court for the Eastern District of Missouri . . .

Zogby Decl. Ex. B, § 4 (emphasis added). The language of the forum selection clause is clear and unambiguous; the clause applies to all litigation that is related in any way to the interpretation or performance of the contract. *See Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d at 1074-75 (finding forum selection clause governing disputes that arose "in relation to" an agreement to be unambiguous). In addition, the clause applies to "all litigation," as opposed to merely claims arising from the Agreement itself. *Cf. id.* at 1074 (observing that forum selection clause was not merely limited to "claims" under an agreement but to all "disputes" arising therefrom). Therefore, the Court must determine whether the Complaint is related in any way to the interpretation or performance of the Agreement. At the outset, the Court notes that the language in the Agreement is akin to the broader language discussed by the Third Circuit in *Carlyle*.

Prime Aid maintains that its AWP and antitrust claims against ESI "require no interpretation or analysis of either parties' contractual performance" and the Agreement is "legally irrelevant." Plf's Br. at 6, 8. The Court disagrees. First, despite Prime Aid's argument that the Agreement is not relevant, Prime Aid repeatedly refers to ESI's termination of the Agreement. Compl. ¶¶ 57, 59, 61-64. Critically, Prime Aid argues that ESI's termination of the Agreement in 2014 was essentially in bad faith and was used as a pretext to deny Prime Aid's 2016 application. ESI denied Prime Aid's 2016 application due to a "Program Integrity Alert." Compl. ¶ 54. Although the denial "was devoid of any explanation," ESI later suggested that the denial was due to "numerous breaches" of the Agreement in 2014, which led to the Agreement's termination. *Id.*

6

¶¶ 54, 57. Prime Aid alleges, however, that ESI's termination of the Agreement was for immaterial, picayune violations. *Id.* ¶¶ 57, 59, 61-64 (explaining Prime Aid's 2014 breaches and why they are not legitimate reasons for the termination in 2014 or subsequent denial in 2016). In essence, this case appears to turn on whether ESI's 2014 termination of the Agreement was appropriate. If termination was appropriate, Plaintiff's argument that the 2016 denial was "arbitrary" (Plf's Br. at 20) will not likely pass muster. This analysis is entirely dependent on the terms of, and the parties' performance under, the Agreement. Like *Wyeth*, this case is clearly related to the interpretation or performance of the Agreement because, as pled, Prime Aid's claims rest upon the parties' actions pursuant to the Agreement and the related denial in 2016. The Agreement, along with its forum selection clause, clearly has a logical relationship with the matter pled. Consequently, the forum selection clause is applicable to this dispute.

### 2. Section 1404(a) Analysis

Because the forum selection clause governs this dispute, the Court will apply the modified Section 1404(a) analysis set forth in *Atlantic Marine*. *Lasoff*, 2016 WL 3555076, at *4. As a result, the Court gives Prime Aid's choice of forum no weight. *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581. In addition, the private interest factors weigh entirely in favor of the Eastern District of Missouri and the Court will only consider the public interest factors.

The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *MaxLite, Inc.*, 193 F. Supp. 3d at 392.

The Court concludes that in this instance the public interest factors weigh in favor of transfer. The first factor is neutral as a judgment from either district could easily be registered in another district. *See SI Power LLC v. Pathway Holdings Mgmt. V, LLC*, No. 15-6101, 2016 WL 7130920, at *9 (D.N.J. Dec. 7, 2016). In addition, although Prime Aid is a New Jersey corporation, transfer to the Eastern District of Missouri will allow for easier and economical litigation because, in accordance with the forum selection clause at issue here, the parties are currently engaged in litigation in the Eastern District of Missouri for breach of contract and other claims related to the Agreement. Plf's Br. at 7; *see Burger King Corp. v. Stroehamann Bakeries, Inc.*, 929 F. Supp. 892, 895 n.2 (E.D. Pa. 1996) (stating that "[t]he existence of a related action in the transferor or transforee district is a strong factor in a transfer decision where judicial economy can be achieved . . . ."). The third factor is neutral because courts in either district can effectively manage this case. The sixth factor is also neutral; although the complaint requires application of New Jersey's antitrust laws and the AWP, Missouri's choice of law rules apply (*see Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 582) and the Agreement contains a Missouri choice of law provision. Zogby Decl. Ex. A, § 7.11. The fourth and fifth factors, however, weigh in favor of a New Jersey forum as this case allegedly impacts New Jersey residents' access to medication. But these factors alone are not enough to tip the scales in favor of retaining jurisdiction as "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 581. Although the outcome of this case could affect New Jersey residents, the Court does not believe that this necessitates flouting the parties' clear contractual decision. As a result, the Court concludes that transfer is appropriate under Section 1404(a).

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to transfer is **GRANTED** (D.E. 11). As a result, the Court does not reach Defendant's motion to dismiss. Accordingly, this case shall be transferred to the United States District Court for the Eastern District of Missouri. An appropriate Order accompanies this Opinion.

Dated: March 21, 2017

John Michael Vazquez, U.S.D.J.